**Eduardo REYES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–91–00082–CR.**

Court of Appeals of Texas,
El Paso.

Dec. 2, 1992.

Charles Louis Roberts, El Paso, appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for the State.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

LARSEN, Justice.

A jury convicted Eduardo Reyes, Appellant, of two counts of attempted murder. The trial court assessed punishment at two concurrent 16 year terms of imprisonment. In nine points of error, Appellant challenges various trial court rulings admitting and excluding evidence. In a tenth point, Appellant asserts he was denied effective assistance of counsel. We reverse the judgment of the trial court and remand the cause for a new trial, based upon Points of Error Nos. One and Two. We address the merits of both claims because they are interrelated, involve important constitutional rights and are likely to recur.

### Facts

Appellant Eduardo Reyes, a sixteen-year-old certified as an adult, was indicted on two counts of attempted murder stemming from gang-related gunplay. His initial trial resulted in a hung jury and mistrial. At Reyes's second trial, one of the State's witnesses disappeared. Over defense ob-

jection, the State introduced that witness's testimony from the first trial, arguing it was admissible under Tex.R.Crim.Evid. 804. That testimony identified Eduardo Reyes as the individual firing a shotgun at two teenage boys from the rear of a pickup truck in the parking lot of Mustang Sally's, an El Paso nightclub. Reyes, on the other hand, denied he was even present at the scene when the gun was fired. Other witnesses testified that the truck's owner/driver had opportunity to fire the shotgun. Five witnesses who had given earlier statements identifying Mr. Reyes as the shooter recanted at the second trial claiming their testimony had been coerced.

At the first trial, the defense called one of the truck's passengers as a defense witness. He testified that the truck's owner made furtive gestures during and after the gunshots. When recalled by the defense at the second trial, the passenger refused to testify, for the first time claiming his Fifth Amendment privilege against self-incrimination. Appellant then tried to introduce the passenger's former testimony under Tex.R.Crim.Evid. 804, but the trial court ruled the evidence inadmissible.

Thus, this Court is confronted with a mirror-image situation, with both sides of a criminal case urging admission of an unavailable witness's testimony. The trial judge's reasoning led to inconsistent results: allowing the testimony of a State's witness, and excluding the testimony helpful to defendant. We find this was an abuse of the court's discretion and harmful error.

### Former Testimony of an Unavailable Witness

We focus our attention in this case upon the trial judge's discretion in allowing or excluding former testimony by unavailable witnesses. The Tex.R.Crim.Evid. 804(b)(1) provides:

*Hearsay Exceptions.* The following are not excluded if the declarant is unavailable as a witness:

*(1) Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

There is no question that the former testimony offered here met the necessary criteria: the earlier mistrial was clearly the same proceeding, and concerned the same parties who had identical motivation to develop the testimony. The difficult question is, rather, whether the witnesses in this case were "unavailable" for purposes of this exception to the hearsay rule.

A witness is "unavailable" if he or she: (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or

. . . . .

(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance or testimony by process or other reasonable means.

A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying. Tex.R.Crim. Evid. 804(a).

■ Within these guidelines, the trial court abuses its discretion only if its decision is outside the zone of reasonable disagreement. *Kelly v. State*, 824 S.W.2d 568, 574 (Tex.Crim.App.1992); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim.App.1991, on rehearing); *Urbano v. State*, 808 S.W.2d 519, 521 (Tex.App.— Houston [14th Dist.] 1991, no pet.).

### The State's Unavailable Witness

On the second afternoon of trial, the State called its investigator who testified he began his search for a certain witness only three days before trial. He had a subpoena issued. Upon learning that the witness might be in Juarez, Mexico, the investigator called upon the witness's grandmother to assist him. The grandmother testified she had looked for the

witness and asked for the assistance of another grandson. Neither was successful in finding the witness. That was the full extent of the State's efforts to locate and bring the witness to testify. Based upon these efforts, the State urged that the witness was unavailable and proffered his testimony at the first trial of defendant under Tex.R.Crim.Evid. 804.

█ The determination of whether the efforts to secure the presence of the witness were sufficient to meet the test of Tex.R.Crim.Evid. 804(a) is within the sound discretion of the trial judge. The test has been described as "good faith efforts undertaken prior to trial to locate and present that witness." *Otero–Miranda v. State,* 746 S.W.2d 352, 355 (Tex.App.—Amarillo 1988, pet. ref'd, untimely filed) citing *Barber v. Page,* 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968); *Urbano,* 808 S.W.2d at 521. As illustration, in *Otero–Miranda* the Amarillo Court of Appeals found that the defense had not shown good faith efforts when it did nothing beyond mere issuance of unserved subpoenas to secure two Mexican citizen witnesses attendance at trial. In *Urbano,* the Houston Fourteenth Court of Appeals did find good faith efforts where an investigator had checked the witness's driver's license listing, contacted utility companies in search of a current address, went to her last known address to interview her apartment manager and other residents and spoke with her last known employer.

█ We believe the test here is similar to that applied when the State seeks a continuance for want of a witness under Tex.Code Crim.Pro.Ann. art. 29.04 (Vernon 1989). There, also, the State must show due diligence in its attempt to obtain the missing witness's attendance. *See generally, Trull v. State,* 721 S.W.2d 378, 381 (Tex.App.—Tyler 1986, no pet.)

█ Moreover, we do not believe the State's duty to obtain attendance of a witness is diminished simply because testimony was previously recorded.[1] Here, the

State enlisted the assistance only from the witness's family, asking his grandmother to find him in Mexico a mere three days prior to trial. We cannot consider this to be due diligence or reasonable good-faith under the facts here. Although the district attorney's investigator testified that Mexican officials frequently render assistance when a witness's location is known, the State did not contact those authorities in this case. Certainly the State attempted no formal proceedings to bring this witness from across the border to testify. We conclude that the prosecution's attempt to secure a witness's attendance at trial must reach the level of due diligence before a trial judge may rationally conclude that the efforts by the State constituted "other reasonable means." We find that the State did not meet its burden of good faith effort here. Point of Error No. One is sustained.

█ Having found error that admission of this testimony on behalf of the State was error, we must now apply a harmless error analysis. Tex.R.App.P. 81; *Harris v. State,* 790 S.W.2d 568, 584–88 (Tex.Crim. App.1989). We must reverse if we are unable to conclude beyond a reasonable doubt that the error made no contribution to the accused's conviction or punishment.

█ Here, we are faced with the closely-guarded right of a defendant to confront his accuser. *See generally, Dedesma v. State,* 806 S.W.2d 928, 930 (Tex.App.—Corpus Christi 1991, pet. ref'd). Both the evidentiary hearsay rules and the Sixth Amendment to the U.S. Constitution are designed to protect this much-valued safeguard in our legal system. Thus, the State must show serious efforts to locate and produce the witness before the former testimony may be introduced. In *Ohio v. Roberts,* 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597, 613 (1980), for example, the U.S. Supreme Court, interpreting the similar federal rule, stated:

[I]f there is a possibility, albeit remote, that affirmative measures might produce

---

1. It has not escaped this Court that the prior unambiguous testimony of this witness was very helpful in obtaining a conviction. His live testimony, in contrast, would have been risky, as he might have chosen to recant, as did so many other prosecution witnesses.

the declarant, the obligation of good faith *may* demand their effectuation. 448 U.S. at 74, 100 S.Ct. at 2543.

Here, former testimony may have made the difference in obtaining conviction. Shortly after the shooting, five State's witnesses gave statements to the police identifying Reyes as the gunman. At trial, however, each of these five witnesses denied Reyes was the shooter, all claiming their prior statements were coerced by police detectives.[2] The only State's witness unequivocally identifying Appellant as the shooter was the witness in Mexico whose testimony from the earlier trial was read to the jury. Thus, the jury clearly placed considerable weight upon that evidence.

■ Moreover, we fear that finding this error harmless would encourage its repetition, as the unavailable witness problem is one which arises frequently here on the border. The State possesses both formal and informal avenues for securing the presence of witnesses from foreign countries. To show a good-faith effort in securing the presence of a witness believed outside our jurisdiction, the State should at least attempt these procedures. While the State need not pursue clearly futile efforts,[3] it must do more than contact a witness's grandmother only three days before trial. We cannot say beyond a reasonable doubt the error here did not contribute to the conviction or punishment. A new trial is required.

### *Defendant's Unavailable Witness*

■ Point of Error No. Two presents a converse situation. There, Reyes challenges the trial court's exclusion of prior testimony by another eyewitness, where the defense sought its introduction. Again, we focus upon whether the witness was unavailable, but here we must interpret when a witness is unavailable because exempted from testifying on the ground of privilege.

The defense testimony excluded from the first trial shows only that Appellant's counsel called the witness, the witness was sworn and testified about events he saw around the time of the shooting. Portions of his testimony were self-incriminating. Although the record does not indicate the witness was admonished on his constitutional right to silence, neither does it indicate that he was compelled to waive his privilege.

The witness did not advise his own counsel he had been subpoenaed until after he had testified. The witness's counsel testified in a bill of exceptions that had counsel known of the subpoena he would have advised his client to remain silent. The trial judge found that the witness's waiver of his Fifth Amendment privilege at the first trial was made without opportunity to claim the privilege, and he therefore excluded the prior trial testimony.

Appellant Reyes urges that upon the witness's assertion of his Fifth Amendment privilege, he became "unavailable," citing Tex.R.Crim.Evid. 804(a)(1). The trial court, nevertheless, ruled the prior testimony was inadmissible once the witness invoked his Fifth Amendment rights, citing Tex. R.Crim.Evid. 512, which provides:

> A claim of privilege is not defeated by a disclosure which was (1) compelled erroneously or (2) made without opportunity to claim the privilege.

*See also Gulf Oil Corporation v. Fuller*, 695 S.W.2d 769, 773 (Tex.App.—El Paso 1985, orig. proceeding). That the witness's prior testimony may not have defeated his own use of the privilege, however, does not control the use of that testimony in the trial of another.

■ The trial judge's ruling ignores the obvious intent of Rule 804 in cases where a witness invokes a privilege not to testify. A witness is unavailable if he or she "is exempted by ruling of the court on the ground of privilege...." That witness's former testimony, if it otherwise meets the

---

**2.** This evidence was controverted by the State.

**3.** Or as the Seventh Circuit interpreting the similar federal rule has said, the party offering for-

mer testimony need not "butt his head against a wall just to see how much it hurts." *United States v. Kehm*, 799 F.2d 354, 360 (7th Cir.1986).

proper criteria, becomes admissible upon invocation of the privilege. *Bryan v. State*, 837 S.W.2d 637 (Tex.Crim.App. 1992)[4] (grand jury testimony admissible where witness took the Fifth Amendment at trial); *Granger v. State*, 653 S.W.2d 868, 873 (Tex.App.—Corpus Christi 1983), *aff'd*, 683 S.W.2d 387 (Tex.Crim.App.1984), *cert. denied*, 472 U.S. 1012, 105 S.Ct. 2713, 86 L.Ed.2d 728 (1985) (prior testimony of codefendant at her own trial admissible when she refused to testify at defendant's trial).

In this case, the witness probably did not understand his constitutional right to remain silent at the time of his prior testimony. We assume for purposes of this decision that he did not, and we further assume that if he had been properly warned at the first trial, with opportunity to consult counsel, he would have elected not to testify. That is, however, irrelevant to the question before us.[5] When he became "unavailable" for purposes of Eduardo Reyes's trial, the witness's prior testimony became admissible under Tex.R.Crim.Evid. 804. No right of the witness was at issue: he was not being asked to testify against himself, nor was he being compelled to testify on matters which were not already a part of the public record.

The trial court therefore erred in excluding this witness's testimony. He mistakenly determined that if a witness's prior testimony fell within the ambit of Tex.R.Crim. Evid. 512, testimony in the previous trial could not be used for any purpose. In light of the clear wording of Tex.R.Crim.Evid. 804 and under the holdings of *Bryan* and *Granger* (both of which involved the invocation of Fifth Amendment rights at a second proceeding), this ruling was wrong.

We therefore again apply the harmless error analysis. Tex.R.App.P. 81; *Harris*, 790 S.W.2d at 584–88. The excluded evidence served to cloud the shooter's identity. The State could not produce first-hand testimony unequivocally identifying Appellant as the shooter. Identity was the *only* issue in dispute. Appellant's closing argument centered upon circumstantial evidence which pointed toward others who might have fired the gun. The testimony sought to be admitted here would have helped defendant's efforts to establish reasonable doubt as to the gunman's identity, and its exclusion was not harmless. We cannot say beyond a reasonable doubt the error did not contribute to the conviction or sentence. We sustain Point of Error No. Two and reverse the judgment of the trial court.

### Conclusion

The evidentiary rulings of the trial court excluded an important aspect of the defendant's case and enhanced the case for the prosecution. The trial judge's application of Tex.R.Crim.Evid. 804 was not even-handed: he erred twice, both times in ways which harmed the defendant. Thus, we cannot say beyond a reasonable doubt that the errors committed here did not contribute to Eduardo Reyes's conviction. Having found reversible error in Appellant's first and second points of error, we do not address those remaining. We remand the cause for a new trial.

---

**4.** The witness claiming privilege becomes unavailable to the defense only; as the *Bryan* opinion points out, the witness remains available to the prosecution because the State is empowered to grant immunity.

**5.** It would be very relevant, of course, if the question here was whether the witness's prior testimony could be used *against the witness himself*. That is the issue Tex.R.Crim.Evid. 512 is designed to address, not the admissability of evidence in a case where the witness is not himself on trial.