Opinion issued May 3, 2007 








 



 







In The

Court of Appeals

For The

First District of Texas






NO. 01-05-01150-CR

__________


TED ALANIZ WILLIAMS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 185th District Court

Harris County, Texas

Trial Court Cause No. 1043042






MEMORANDUM OPINION

 A jury found appellant, Ted Alaniz Williams, guilty of the offense of
aggravated sexual assault of a child, (1) and, after appellant pleaded true to the
allegation in one enhancement paragraph that he had a prior felony conviction, the
trial court assessed his punishment at confinement for forty years. In four issues,
appellant contends that the evidence is legally and factually insufficient to support his
conviction and that the trial court abused its discretion and violated his due process
rights in denying his request to present prior sworn testimony of a material,
unavailable witness. 

 We affirm. Factual and Procedural Background

 The complainant, who was fourteen years old at the time of trial, testified that
during the summer of 2004, she lived with appellant, who is her father, and two
younger siblings at the home of appellant's girlfriend, Tina Rayos. One night, when
Rayos was at a party and the complainant's two younger siblings were sleeping in the
living room, the complainant awoke in her bedroom and found appellant, who
smelled like beer and seemed drunk, on top of her unbuckling her pants. The
complainant elbowed appellant, but appellant unbuttoned and pulled down her pants. 
The complainant started crying, and appellant put his knees on top of her arms. 
Appellant then "put his penis in [her] vagina," which hurt, and appellant "moved up
and down" while holding her down. The complainant did not try to fight back, and
the assault lasted for approximately 10 minutes. After appellant finished and told her
not to tell anyone, he left the room. The complainant then went to the bathroom and
saw that she was bleeding from her vagina. Two days later, the complainant told her
cousin, Vanessa Hernandez, that appellant had done something bad, but asked her not
to tell anyone. A few days after that, she told Hernandez that appellant had assaulted
her. The complainant stayed at Rayos's house for two to three more weeks after the
assault. The complainant and Hernandez subsequently told other relatives, and the
complainant finally told her mother after her mother had come to get her. 

 On cross-examination, the complainant agreed that while she lived at Rayos's
house, Rayos's father also stayed in the house some nights when she was there and,
when he stayed there, she would sleep in the living room on the couch. The
complainant also agreed that she had disagreements with appellant over the amount
of time that she talked on the telephone and appellant had grounded her and hit her
with a belt. The complainant also stated that after appellant and Rayos had gotten
into a fight, the complainant and appellant had moved into the house of appellant's
mother for a short period of time. The complainant conceded that she spoke with her
mother a few days after the assault on the telephone, but did not tell her about it. The
complainant explained that appellant had already called her mother and asked her to
come get the complainant. The complainant agreed that Rayos and appellant
provided a more stable environment and that her mother bounced around from place
to place. 

 Vanessa Hernandez testified that during the summer of 2004, after the
complainant seemed quiet for a few days, Hernandez pushed the complainant to tell
her what was wrong. The complainant, who was "in tears," told Hernandez that
someone had raped her, but asked Hernandez not to tell anyone. Two days later, the
complainant told Hernandez that appellant had raped her. Hernandez told her mother
and then told the complainant's mother. Monica Canseco, Hernandez's mother,
testified that when Hernandez told her that appellant had raped the complainant,
Canseco told Hernandez that she had to tell the complainant's mother. When
Canseco spoke to the complainant, stressing the seriousness of the allegations, the
complainant told her that she was not lying. The complainant explained that
appellant came into her room drunk, started touching her, went inside her, penetrated
her, and that it hurt. Canseco stated that the complainant was both "slow" and
socially immature.

 Claudia Mullin, a forensic interviewer at the Harris County Children's
Assessment Center ("CAC"), testified that she interviewed the complainant, and, 
during the interview, the complainant had used her body to show how she had been
assaulted. Mullin stated that the complainant's descriptions were consistent with
sexual abuse.

 Tanya Hernandez, the complainant's mother, testified that the complainant
went to live with appellant after Tanya asked appellant to take the complainant
because she was not working at the time. Tanya, who had a prior conviction for the
offense of theft, agreed that because of her financial problems, she and the
complainant had to move a lot when the complainant was growing up. At some point,
Tanya gave temporary guardianship to appellant. Tanya stated that when she saw the
complainant after learning of the assault, the complainant was shaking and crying. 
Tanya then notified the Pasadena Police Department, and the complainant was
subsequently interviewed and was given a medical exam.

 Kristin Fraser, an emergency room nurse and forensic nurse examiner, testified
that she performed a sexual assault examination on the complainant on July 26, 2004. 
Fraser stated that she saw no signs of external injuries or trauma, although she noted
that it was possible that any injuries could have already healed since the complainant
came in for an examination approximately one month after the assault.

 Pasadena Police Detective T. Brinson testified that he arranged the
complainant's interview at the CAC and that he also interviewed appellant. Brinson
stated that appellant denied the allegations and claimed that the complainant
fabricated the allegations because he had spanked her, he was not letting her talk on
the telephone, and he set other rules. Appellant also told Brinson that the
complainant was having sex with other boys. On cross-examination, Brinson agreed
that he never went to the house where the assault occurred. 

 Appellant testified that he had been previously convicted of the offenses of
auto theft, carrying a concealed weapon, assault, burglary, and aggravated assault
with a deadly weapon. Appellant stated that he had a strong relationship with the
complainant. The complainant had lived with him on previous occasions for short
periods of time, but, because of his rules, she would run away or go out with different
people. In the summer of 2004, the complainant lived with appellant at the home of
his girlfriend, Tina Rayos, along with Rayos's father and two of appellant's other
children. Appellant described the home as having two bedrooms. Appellant and
Rayos stayed in one bedroom, Rayos's father stayed in the other bedroom, and the
complainant stayed in the living room. Appellant stated that the complainant
developed behavioral problems and violated the rules of the house. He had spanked
the complainant for telling his younger daughter inappropriate things, and he had
decided to send the complainant back home. When appellant learned of the
complainant's allegations, he was "mad." He denied sexually assaulting the
complainant, explaining that the complainant did not have a bedroom in Rayos's
home. Appellant also stated, as possible reasons for the complainant to fabricate the
allegations, that he had caught the complainant smoking marijuana, he owed her $20,
and he imposed rules on the complainant. 

 Legal and Factual Sufficiency

 In his first and second issues, appellant argues that the evidence is legally and
factually insufficient to support his conviction for aggravated sexual assault of a child 
because the assault could not have occurred, contrary to the complainant's testimony,
"in her bedroom" and her allegations were not corroborated with DNA or any other
physical evidence. Appellant makes the same complaints in his factual sufficiency
challenge, but also asserts that the complainant's testimony was the only evidence of
the assault and that the complainant fabricated her allegations after being required to
leave Rayos's home.

 We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt.
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). The trier of fact
is the sole judge of the weight and credibility of the evidence. Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal
sufficiency review, we may not reevaluate the weight and credibility of the evidence
and substitute our judgment for that of the fact finder. Dewberry v. State, 4 S.W.3d
735, 740 (Tex. Crim. App. 1999).

 In a factual sufficiency review, we view all the evidence in a neutral light, both
for and against the finding, and set aside the verdict if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., that the
jury's verdict seems "clearly wrong and manifestly unjust," or the proof of guilt,
although legally sufficient, is nevertheless against the great weight and preponderance
of the evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). 
We note that the jury is in the best position to evaluate the credibility of witnesses,
and we are required to afford "due deference" to the jury's determinations. Marshall
v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

 A person commits the offense of aggravated sexual assault of a child if the
person intentionally or knowingly causes the penetration of the anus or sexual organ
of a child by any means or intentionally or knowingly causes the sexual organ of a
child to contact or penetrate the sexual organ of another person, including the actor,
and the child is younger than fourteen years of age. Tex. Pen. Code Ann.
§ 22.021(a)(1)(B)(i),(iii), (a)(2)(B) (Vernon Supp. 2006). 

 Here, the complainant testified that she awoke to find appellant on top of her
and unbuckling her pants. Appellant then pulled down her pants and "put his penis
in [her] vagina." The complainant stated that the assault hurt and caused her to bleed. 
We note that the testimony of a complainant, standing alone, is sufficient to support
a conviction for sexual assault. Jordan-Maier v. State, 792 S.W.2d 188, 190 (Tex.
App.--Houston [1st Dist.] 1990, pet. ref'd); Ruiz v. State, 891 S.W.2d 302, 304 (Tex.
App.--San Antonio 1994, pet. ref'd). Additionally, Hernandez, the complainant's
cousin, testified that the complainant confided to her that appellant had sexually
assaulted her. Monica Canseco, Vanessa's mother, also testified that the complainant
told her that appellant penetrated her and that it hurt. Claudia Mullin, a forensic
interviewer, testified that the complainant cried as she showed Mullin how appellant
had sexually assaulted her. Mullin also stated that the complainant's descriptions
were consistent with sexual abuse. 

 Appellant argues that the complainant's testimony was not credible because,
contrary to her allegations, she did not have her own bedroom. Appellant further
argues that the complainant was motivated to fabricate these allegations because,
among other reasons, he was requiring her to leave his home "as a punishment for
misbehaving." However, the trier of fact is the sole judge of the weight and
credibility of the evidence. See Margraves, 34 S .W.3d at 919; Johnson v. State, 23
S.W.3d 1, 7 (Tex. Crim. App. 2000); Cain, 958 S.W.2d at 408-09. 

 Furthermore, although the complainant appears to have agreed that she
sometimes shared a room with Rayos's father, to the extent that there were any
conflicts in the testimony about whether the complainant was assaulted in her
bedroom, the "reconciliation of conflicts in the evidence is within the exclusive
province of the jury" and the jury was free "to believe some testimony and disbelieve
other testimony." Margraves, 34 S.W.3d at 919. 

 Moreover, although there was no DNA or other physical evidence that
appellant sexually assaulted the complainant, it was undisputed that the complainant
was not examined until at least several weeks after the assault. Under these
circumstances, the lack of medical or DNA evidence does not render the evidence
supporting appellant's conviction legally insufficient. See Washington v. State, 127
S .W.3d 197, 205 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd, untimely filed)
("The jury could have reasonably believed that [the complainant] was sexually
assaulted, but that, due to the circumstances of the assault, there was no physical
evidence of the assault remaining."). Viewing all the evidence in the light most
favorable to the jury's verdict, we conclude that a rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Accordingly,
we hold that the evidence is legally sufficient to support appellant's conviction. In conducting our factual sufficiency review, we recognize that appellant
denied the allegations and claimed that the complainant fabricated the allegations for
a variety of reasons. However, we again note that the jury, as the sole judge of the
credibility of witnesses and the weight to be given to their testimony, was entitled to
resolve any credibility issues against appellant. See Johnson, 23 S.W.3d at 7; Robles
v. State, 104 S.W.3d 649, 652 (Tex. App.--Houston [1st Dist.] 2003, no pet.). Thus,
the jury was free to believe or disbelieve appellant's testimony that the complainant
had a motive to make false accusations against him. Also, because of the
circumstances presented in this case, the lack of DNA or other physical evidence does
not render the evidence supporting appellant's conviction factually insufficient. See
Washington, 127 S.W.3d at 205. We conclude, viewing the evidence neutrally, that
the evidence is not so weak that the verdict is clearly wrong or manifestly unjust or
that the proof of guilt is against the great weight and preponderance of the evidence. 
Accordingly, we hold that the evidence is factually sufficient to support appellant's
conviction.

 We overrule appellant's first and second issues. 

Testimony of Unavailable Witness

 In his third and fourth issues, appellant contends that the trial court abused its
discretion and violated his due process rights in denying his request to present the
prior sworn testimony of Tina Rayos, a material, unavailable witness. 

 Former testimony is "testimony given as a witness at another hearing of the
same or a different proceeding, . . . if the party against whom the testimony is now
offered, or a person with a similar interest, had an opportunity and similar motive to
develop the testimony by direct, cross, or redirect examination." Tex. R. Evid.
804(b)(1). Former testimony is admissible under a hearsay exception if the declarant
is unavailable as a witness, i.e., if the declarant "is absent from the hearing and the
proponent of the declarant's statement has been unable to procure the declarant's
attendance or testimony by process or other reasonable means." Id. 804(a)(5). To
introduce the former testimony of an unavailable witness, the proponent of the
testimony must have made a good faith effort to obtain the witness's presence at trial. 
Urbano v. State, 808 S.W.2d 519, 521 (Tex. App.--Houston [14th Dist.] 1991, no
pet.). However, a proponent is not required by these rules to perform all improbable
efforts to produce the witness. Id. at 522. We review the trial court's determination
of availability under Rule 804 for an abuse of discretion. See id. at 521;
Otero-Miranda v. State, 746 S.W.2d 352, 355 (Tex. App.--Amarillo 1988, pet. ref'd,
untimely filed).

 In Urbano, the State's investigator testified that in his attempt to locate an
unavailable witness, he checked her driver's license listing, contacted the phone and
utilities companies to find a current address, went to her last known address and
spoke to an apartment manager and several residents, attempted to trace any vehicle
she might have registered in Texas, and also spoke with her last known employer, but
was unsuccessful in locating the witness's whereabouts or forwarding address. Id.
at 522. On these facts, the court held that the State acted in good faith in its attempt
to locate the witness. Id. 

 In contrast, in Otero-Miranda, the court concluded that the defendant had not
shown good faith efforts to secure two witnesses' attendance at trial when he did
nothing beyond mere issuance of unserved subpoenas. Otero-Miranda, 746 S.W.2d
at 355. Because the defendant failed to establish the witnesses' unavailability under
Rule 804, the court held that the trial court did not abuse its discretion in excluding
the testimony. Id. 

 Finally, in Reyes, the State's investigator testified that he began his search for
the witness only three days before trial, had a subpoena issued, and called the
witness's grandmother to help him locate the witness. Reyes v. State, 845 S.W.2d
328, 330 (Tex. App.--El Paso 1992, no pet.). The grandmother also testified that she
had looked for the witness and asked for assistance from another grandson, but was
not successful in finding the witness. Id. at 330-31. However, the court held that the
State did not meet its burden of establishing a good faith effort and thus could not
offer the former testimony. Id. at 331. 

 Here, appellant's counsel conceded that Rayos had been available to her up
until August 2005, but that she had lost contact with Rayos since then; the case was
tried in November 2005. Appellant's counsel stated that the last address that she had
for Rayos was no longer valid, the home telephone number she had was disconnected,
and that she had left numerous, unreturned messages on Rayos's cell phone. On the
night before trial, appellant contacted Rayos's sister and learned that Rayos had gone
to Corpus Christi, but that was all the information she had. Appellant's counsel
stated that she did not issue a subpoena for Rayos because her whereabouts were
unknown. On the morning of trial, appellant's counsel noticed that the State had
subpoenaed Rayos. However, the State stated that although it had issued a subpoena,
it did so less than a week before trial and spent only "maybe a day or two with [their]
investigator looking for [Rayos]." After deciding that it did not need her testimony,
the State abandoned its search. The State also asserted that it might have been able
to locate Rayos had it continued to search.

 Under these facts, without any evidence that appellant made any effort to locate
Rayos from August 2005 until November 2005, the date of trial, we hold that the trial
court did not abuse its discretion in concluding that appellant failed to show that he
made a good faith effort to obtain Rayos's presence at trial and that Rayos was
unavailable to testify at trial.

 We overrule appellant's third and fourth issues. 


 

Conclusion

 We affirm the judgment of the trial court.


 

 Terry Jennings

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Do not publish. See Tex. R. App. P. 47.2(b).

1. See Tex. Pen. Code Ann. §§ 22.021(a)(1)(B)(i), (iii), (a)(2)(B) (Vernon Supp. 2006).