

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00333-CR

Steven James **ELSIK**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 156th Judicial District Court, McMullen County, Texas
Trial Court No. M-21-0009-CR-B
Honorable Starr Boldrick Bauer, Judge Presiding

**OPINION ON MOTION FOR REHEARING**

Opinion by:     Beth Watkins, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Beth Watkins, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: September 27, 2023

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Appellant Steven James Elsik appeals his second-and third-degree smuggling of persons convictions on sufficiency and evidence grounds. On July 26, 2023, this court issued an opinion and judgment affirming in part, reversing in part, and remanding the cause to the trial court for further proceedings. The State filed a motion for rehearing. After consideration, we deny the motion for rehearing, withdraw our July 26, 2023 opinion and judgment, and substitute this opinion

and judgment in their place. We again affirm the trial court's judgment in part, reverse it in part, and remand the cause to the trial court for further proceedings.

## BACKGROUND

Around 1:00 a.m. on July 22, 2021, McMullen County Sheriff's Office Deputy David Gardner observed a weighted-down U-Haul pickup truck traveling on Highway 16, closely following a silver SUV. Gardner, who was driving a marked vehicle, caught up to the truck. The truck pulled onto the shoulder "for a few hundred yards and then pull[ed] back into the main lane of traffic." Gardner then turned on his emergency lights to conduct a traffic stop for a weight inspection. The highway was a construction zone with reflective cones spaced tightly together and no obvious place to pull over; the truck did not pull over. Gardner engaged his siren and the truck quickly accelerated, crossed a double yellow line, and passed the silver SUV. The truck reached eighty-eight miles per hour and traveled several miles before pulling over.

Gardner drew his service weapon and conducted a "felony takedown" of the driver, Elsik, who cooperated. After Gardner arrested Elsik and placed him in the patrol car, he noticed "blankets covering the bed of the truck and [what] appeared to be movement with people hiding underneath the blankets." Gardner waited for back up; after two more deputies arrived, they removed the blankets and discovered passengers laying horizontal in stacked layers. The deputies ordered them out of the truck at gunpoint, two at a time, and immediately handcuffed them. There were thirteen passengers altogether—one female in the passenger seat of the truck plus five females and seven males in the bed of the truck. All the passengers later identified themselves as Mexican citizens to United States Border Patrol; two identified themselves as juveniles—a seventeen-year-old boy and a seventeen-year-old girl.

The grand jury charged Elsik with two counts of second-degree smuggling of persons under 18, eleven counts of third-degree smuggling of adults, and one third-degree count of evading arrest

with a motor vehicle. The jury convicted Elsik on all counts. He pled true to an enhancement paragraph and the jury assessed punishment at ninety-nine years on the second-degree smuggling counts, twenty years on the third-degree smuggling counts, and five years on the evading count. Elsik appeals the smuggling counts.

## ANALYSIS

### Issue 1-Sufficiency

In his first issue, Elsik argues that the evidence is insufficient to support his convictions for smuggling the six female passengers.

### Standard of Review and Applicable Law

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). Under that standard, we examine all the evidence in the light most favorable to the verdict and resolve all reasonable inferences from the evidence in the verdict's favor to determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). "[N]o evidence is ignored because the standard requires a reviewing court to view all of the evidence in the light most favorable to the verdict." *Cary v. State*, 507 S.W.3d 750, 759 n.8 (Tex. Crim. App. 2016) (internal quotation marks and emphasis omitted). "An appellate court cannot act as a thirteenth juror and make its own assessment of the evidence." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). Rather, "[a] court's role on appeal is restricted to guarding against the rare occurrence when the factfinder does not act rationally." *Id*. This rationality requirement is a key and explicit component of the *Jackson* sufficiency standard. *See Jackson*, 443 U.S. at 319.

*Application*

Under the version of the statute that applies here,[1] a person commits an offense of smuggling of persons "if the person, with the intent to obtain a pecuniary benefit, knowingly: (1) uses a motor vehicle . . . to transport an individual with the intent to . . . conceal the individual from a peace officer[.]" TEX. PENAL CODE § 20.05(a)(1)(A) (West 2019). This offense "is a felony of the third degree" unless the "smuggled individual is a child younger than 18 years of age at the time of the offense," in which case it is a "a felony of the second degree[.]" TEX. PENAL CODE § 20.05(b), (b)(1)(B).

Elsik argues the State failed to prove he intended to conceal the passenger in the front seat. He acknowledges "clear evidence that twelve people were hiding under blankets in the bed of the truck," but contends "the State made no attempt to prove that the front seat female passenger was concealed." He also argues that because the State "failed to connect its evidence of concealed passengers to actual counts in the indictment, there is insufficient evidence that Elsik intended to conceal with respect to all six counts identifying female passengers." In other words, because the evidence is insufficient to establish the intent to conceal the female passenger in the front seat, and because the State did not establish the identity of the front-seat passenger, none of the six counts identifying female passengers were proved beyond a reasonable doubt. Elsik relies on *Stahmann v. State*, a case in which the Court of Criminal Appeals held that, for purposes of the tampering-with-physical-evidence statute, concealment requires a showing that the allegedly concealed item was "hidden, removed from sight or notice, or kept from discovery or observation[.]" *Stahmann v.*

---

[1] In 2021, the legislature amended this statute to remove the "with the intent to obtain a pecuniary benefit" element and make it a sentencing enhancement. Acts 1999, 76th Leg., ch. 1014, § 1, eff. Sept. 1, 1999. Amended by Acts 2011, 82nd Leg., ch. 223 (H.B. 260), § 2, eff. Sept. 1, 2011; Acts 2015, 84th Leg., ch. 333 (H.B. 11), § 14, eff. Sept. 1, 2015; Acts 2021, 87th Leg., ch. 572 (S.B. 576), § 2, eff. Sept. 1, 2021 (current version at TEX. PENAL CODE § 20.05).

*State*, 602 S.W.3d 573, 581 (Tex. Crim. App. 2020) (internal quotation marks omitted). But under the statute at issue in *Stahmann*, the State had the burden to prove *actual* concealment. *Id*. at 576.

Here, in contrast, the smuggling statute only requires an *intent* to conceal. TEX. PENAL CODE § 20.05(a)(1)(A). The State's evidence that Elsik drove a U-Haul truck late at night and evaded detention by speeding up instead of pulling over after Deputy Gardner activated the lights and siren on his marked patrol vehicle was evidence from which a rational trier of fact could have found an intent to conceal all the passengers in the truck. *See United States v. Perez-Gonzalez*, 307 F.3d 443, 446 (6th Cir. 2002). We overrule Elsik's first argument.

### *Issues 2 and 3-Evidence*

In his second and third issues, Elsik argues that the trial court's admission of the out-of-court statements from the passengers providing their names, nationalities, and birthdates violated his confrontation rights and was inadmissible hearsay. Over Elsik's objections, the trial court admitted United States Border Patrol Supervisor Alfonso Carrion Gonzales's testimony about his questioning of the passengers after their detention. Gonzales testified that he was dispatched from the Freer Border Patrol Checkpoint to the Sheriff's Office to question the thirteen passengers. He collected the name, country of origin, and date of birth from each passenger and recorded them in a report. Gonzales testified that all thirteen passengers admitted to being in the United States illegally and to having come from Mexico. Gonzales read the information in the report to the jury.

In clarifying its evidentiary ruling on Elsik's confrontation and hearsay objections, the trial court found the passengers "unavailable" and their identities and nationalities "within the personal knowledge of Agent Gonzales."

1.      Confrontation Clause

If "testimonial evidence is at issue," then "the Sixth Amendment demands what the common law required: [witness] unavailability and a prior opportunity for cross-examination."

*Crawford v. Washington*, 541 U.S. 36, 68 (2004). Statements are testimonial if "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). "*Davis* requires a combined inquiry that accounts for both the declarant and the interrogator." *Michigan v. Bryant*, 562 U.S. 344, 367 (2011). And in "many instances, the primary purpose of the interrogation will be most accurately ascertained by looking to the contents of both the questions and the answers." *Id*. at 367–68. We review a trial court's finding on the testimonial nature of a statement de novo. *See Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

Elsik argues that the passengers' statements relating to their names, nationalities, and birthdates were testimonial, and their admission through Gonzales constituted a violation of the Sixth Amendment's Confrontation Clause.

Entry into the United States at any time or place other than as designated by immigration officers is a crime. 8 U.S.C. § 1325. Therefore, a border patrol agent's interview of a person thought to have entered the country illegally may lead to prosecution of the entrant. *See Davis*, 547 U.S. at 822. The State acknowledges that *Crawford* would bar statements relating to the underlying smuggling transactions but argues *Crawford* does not bar "basic identifying data" because such data are "non-testimonial facts."

Some federal courts have excluded an unavailable witness's statements made during custodial interrogation about citizenship and alienage on the ground that admission of the statement would violate the transporting defendant's right to confrontation. *See, e.g.*, *United States v. Gonzalez-Marichal*, 317 F. Supp. 2d 1200, 1202–04 (S.D. Cal. 2004). Other courts have concluded immigration files containing "routine biographical information—the entrant's name, date of birth, place of birth[,]" are nontestimonial and admissible under the public records exception to the hearsay rule. *See, e.g.*, *United States v. Caraballo*, 595 F.3d 1214, 1226–27 (11th

Cir. 2010). This is because the primary purpose of the collection of biographical information "is administrative, not investigative or prosecutorial." *United States v. Noria*, 945 F.3d 847, 857 (5th Cir. 2019). Still other courts have found confrontation rights are protected where the agent who was personally involved in processing the noncitizen found in the defendant's vehicle testified and was subject to cross-examination. *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1133–34 (10th Cir. 2014).

We find no confrontation violation. Gonzales—a federal agent—testified that he interviewed the passengers to determine their eligibility to remain in this country. This testimony supports a conclusion that Gonzales's "primary purpose" in questioning the passengers "was to elicit routine biographical information that is required of every foreign entrant for the proper administration of our immigration laws and policies." *Caraballo*, 595 F.3d at 1229; *see I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) (deportation proceeding is "civil action to determine eligibility to remain in this country, not to punish an unlawful entry," though that is itself a crime). Even after each of the passengers admitted to being in the country illegally, no steps were taken to prosecute them. Instead, Gonzales "transported them back to . . . the Freer Border Patrol checkpoint station" where they were assigned to be deported. As a result of Gonzales's investigation, the eleven adults "were returned back to Mexico" immediately; similarly, the juveniles "were not allowed to stay."

Because the circumstances objectively indicate that the primary purpose of Gonzales's interviews was other than to "establish or prove past events potentially relevant to later criminal prosecution," we conclude the resulting statements were not testimonial and their admission did not violate Elsik's confrontation rights. *See Davis*, 547 U.S. at 822; *Caraballo*, 595 F.3d at 1227. Having determined the admission of the identification statements did not violate Elsik's confrontation rights, we turn to whether they were inadmissible hearsay.

2.      Hearsay

Certain hearsay statements are admissible through Texas Rule of Evidence 804 if "the declarant is unavailable as a witness." TEX. R. EVID. 804. A witness is "unavailable" if he or she "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance or testimony." TEX. R. EVID. 804(a)(5).[2]

Rule 804 contains an exception for a "Statement of Personal or Family History," which includes statements about "the declarant's own birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood, adoption or marriage, or similar facts of personal or family history[.]" TEX. R. EVID. 804(b)(3)(A). We review the trial court's ruling on a hearsay objection for an abuse of discretion and are required to affirm the trial court's decision unless it "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *See Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

At trial, the State offered Gonzales's testimony about the names, nationalities, and birthdates of the passengers under the hearsay exception for "Statement of Personal or Family History." TEX. R. EVID. 804(b)(3). The trial court found the passengers unavailable, but Elsik argues that the State failed to prove unavailability under Rule 804 because it failed to put on any evidence that it had not been able, by process or other reasonable means, to procure the declarants' attendance or testimony. TEX. R. EVID. 804(a)(5).

In response to Elsik's hearsay objection, the prosecutor stated:

> Well if I asked the Sheriff, gave him a subpoena to go into Mexico and serve the subpoenas there I think he would look at me in askance and askew and tell me he doesn't have jurisdiction to serve subpoenas over there in Mexico and I'm not going to waste his time.

---

[2] Elsik does not argue that the State "procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying." *Id*.

Once they were deported we're not the federal government. We do not have the ability to hold onto them. They were outside our jurisdiction and outside our reach. And we were unable to get them and find them to even issue a subpoena.

Relying on *Loun v. State*, Elsik argues the prosecutor's statement is no substitute for "evidence that attempting compulsory process in this case would be futile." 273 S.W.3d 406, 420 (Tex. App.—Texarkana 2008, no pet.) (argument that it would be too expensive and impossible to procure out-of-state witness's attendance insufficient to show Rule 804 unavailability). We agree. An unsworn statement by counsel is not competent evidence. *State v. Lopez*, 631 S.W.3d 107, 115 (Tex. Crim. App. 2021). And, to establish that a witness is "unavailable" under Rule 804(a)(5), the proponent of the testimony must demonstrate that a good-faith effort was made prior to trial to locate and present the witness. *Compare Reed v. State*, 312 S.W.3d 682, 685–86 (Tex. App.— Houston [1st Dist.] 2009, pet. ref'd) (evidence of investigator's attempts to locate witness— including exhausting contacts among witness's family and friends who speculated she might be in Chicago and performing records searches—sufficient to show Rule 804 unavailability), *with Reyes v. State*, 845 S.W.2d 328, 331 (Tex. App.—El Paso 1992, no pet.) (evidence that witness's family was asked to locate witness in Mexico three days prior to trial insufficient to show Rule 804 unavailability), *and Otero-Miranda v. State*, 746 S.W.2d 352, 354–55 (Tex. App.—Amarillo 1988, pet. ref'd, untimely filed) (evidence of inability to subpoena Mexican citizen witnesses insufficient to show Rule 804 unavailability). Because the State failed to present any evidence that it had not been able, by process or other reasonable means, to procure the declarants' attendance or testimony, the trial court abused its discretion in finding the declarants unavailable and admitting the hearsay statements under Rule 804. *Loun*, 273 S.W.3d at 420; *Reyes*, 845 S.W.2d at 331; *Otero-Miranda*, 746 S.W.2d at 354–55; *see also United States v. Yida*, 498 F.3d 945, 952 (9th Cir. 2007) (holding requirement in Federal Rule of Evidence 804 that movant be "unable to procure the

declarant's attendance" by "reasonable means" applies to government's actions both before and after witness was deported).

On appeal, the State also argues that the statements were admissible as statements against interest under Rule 803(24). Rule 803 provides exceptions to the rule against hearsay, and it operates regardless of whether the declarant is available as a witness. Rule 803(24) allows admission of a statement "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . had so great a tendency to . . . expose the declarant to" criminal liability, so long as that statement "is supported by corroborating circumstances that clearly indicate its trustworthiness. . . ." TEX. R. EVID. 803(24). The State argues that the statements provided to the Border Patrol agents were admissible because they tended to expose the declarants to criminal liability for illegal entry into the United States and they were supported by corroborating circumstances.

Although the State did not present this theory to the trial court, we are obligated to uphold a trial court's ruling if it is reasonably supported by the record and correct under any theory of applicable law. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). For the same reasons we rejected Elsik's argument that the statements were testimonial, we reject the State's argument that the statements were admissible under Rule 803(24). As the State acknowledged in its argument that the statements were nontestimonial:

> In the instant case the statements of the individuals in question did not relate any facts regarding the transaction that led to their presence in McMullen County. They did not relate any information to Gonzalez that in any fashion bore on the question of pecuniary benefit. They did not relate to Gonzalez their immigration status. In short, their remarks to the Border Patrol agent/agents reflected nothing more than basic identifying data.

Given the nature of the statements, we reject that they could have been properly admitted under Rule 803(24) and turn to the harm analysis.

The erroneous admission of hearsay is non-constitutional error that is subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b). *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Under that rule, an appellate court disregards error that does not affect a defendant's substantial rights. TEX. R. APP. P. 44.2(b). "In making this determination, the following nonexclusive factors are considered: the character of the alleged error and how it might be considered in connection with other evidence; the nature of the evidence supporting the verdict; the existence and degree of additional evidence indicating guilt; whether the State emphasized the complained-of error; the trial court's instructions; the theory of the case; and, relevant voir dire." *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023). "We should not overturn the conviction if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect." *Taylor*, 268 S.W.3d at 592.

After examining the record, we have a fair assurance that the admission of the hearsay had but slight effect on the eleven third-degree counts of smuggling of adults. We cannot say the same about the admission of hearsay's effect on the two second-degree counts for smuggling of juveniles.

*Character of the evidence*

At the outset, we note that neither the name, nationality, nor birthdate of the transported individual is an element of the offense of third-degree smuggling. TEX. PENAL CODE § 20.05(a)(1)(A) ("(a) A person commits an offense if the person, with the intent to obtain a pecuniary benefit, knowingly: (1) uses a motor vehicle . . . to transport an individual with the intent to: (A) conceal the individual from a peace officer[.]"). Conversely, the underage status of the transported individual is an element of the offense of second-degree smuggling. TEX. PENAL CODE § 20.05(a)(1)(A), (b)(1)(B) ("(a) A person commits an offense if the person, with the intent to obtain a pecuniary benefit, knowingly: (1) uses a motor vehicle . . . to transport an individual with

the intent to: (A) conceal the individual from a peace officer[]" and (b)(1)(B) "the smuggled individual is a child younger than 18 years of age at the time of the offense[.]"). Thus, Gonzales's testimony about the alleged-juvenile declarants' birthdates and ages goes to the heart of the State's case against Elsik because it proves an element of those two second-degree offenses. While a hearsay statement of date of birth or age may be neutral in the abstract, as applied to Elsik's case, that information is the difference between a second and third-degree felony.

*How it might be considered in connection with other evidence*

Gonzales testified that two of the passengers identified themselves as juveniles—one a seventeen-year-old boy and the other a seventeen-year-old girl. Gonzales admitted that sometimes non-citizens "give us false names" and "they have different aliases" and there have "been occasions where there are adults that claim that they are juveniles." Gonzales said some of the passengers had identification cards, but that he could not recall which ones. He also conceded that he could not identify the juveniles in the photographs of the group. He said he had confirmed the juveniles' dates of birth and ages with the Mexican Consulate.

*The nature of the evidence supporting the verdict and the existence and degree of additional evidence indicating guilt*

The State's case was strong, except on the point of the juvenile status of two of the passengers. The crime was captured on video and shown to the jury. The dash-cam video showed the chase, the removal of thirteen individuals from Elsik's truck, and their detainment on the side of the road. Photos of the group admitted into evidence do not contain any obvious children; rather, they show a group of mostly young adults. The jury heard Elsik in jail calls saying that he understood the consequences for what he had done.

*The existence and degree of additional evidence indicating guilt*

Aside from Gonzales's testimony based on the alleged juvenile declarants' statements, there was no evidence of the juvenile status of two of the passengers.

*Whether the State emphasized the complained-of error*

The State argued:

> And in Count 1 and Count 2 you had the testimony of the agent who said that he personally identified all 13 folks out there. And that he gave us the dates of birth of two of them.
> Regarding José Alfredo Silva-Martinez his date of birth was October 15th, 2003, and this date of offense is July 22nd 2021. Eighteen plus three is twenty-one. So Mr. José Alfredo Silva-Martinez did not turn 18 until October of 2021 and this was July. So that tells us José Alfredo Silva-Martinez was 17 at the time.
> In Count 2 lists a person Paulina Salinas-Irlanta and the date of birth that she gave Agent Gonzales was March 22, 2004. So you count off 17 years from March 22, 2004, and you have 17. So she would not have turned 18 until March 22 of 2022. So in July 22, 2021, she also was 17 years of age.

*The trial court's instructions*

The trial court appropriately instructed the jury at the guilt-innocence phase of trial that to find Elsik guilty of the smuggling of juvenile counts, it must find, beyond a reasonable doubt, inter alia, that he transported an individual, "who was 18 years of age at the time of the offense" and that if it did not "so find," it would go on to consider the lesser offense of smuggling of adults.

*Relevant voir dire*

At voir dire, the jury learned the punishment range that would apply if the State proved the smuggling of a person under eighteen. Questioning at voir dire focused on the ability to consider the entire range of punishment, and the concept of "intent to conceal."

*Conclusion on hearsay*

After considering the above factors, we have fair assurance that the admission of hearsay did not influence the jury or had but slight effect on the third-degree smuggling of adults convictions, but that it did influence and had more than a slight effect on the second-degree

smuggling of juveniles convictions. *Johnson*, 967 S.W.2d at 417 (defendant entitled to new trial under Rule 44.2(b) because erroneous admission of evidence affected defendant's substantial rights); *Hankston v. State*, 656 S.W.3d 914, 918 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd) (same).

We overrule Elsik's second issue and sustain his third point of error.

## CONCLUSION

We affirm the judgment of the trial court on counts 3-14, reverse the judgment on counts 1-2, and remand the cause to the trial court for a new trial on counts 1-2.

Beth Watkins, Justice

PUBLISH