**George Alexander ERVIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–00–01261–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 11, 2002.

---

Gerald B. Scheve, Houston, for Appellant.

Bridget Holloway, Asst. Dist. Attorney–Harris County, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER, and Justices TAFT and RADACK.

## OPINION

TAFT, Justice.

Appellant, George Alexander Ervin, pled guilty to the offense of delivery of one to four grams of cocaine. After appellant pled true to a prior felony conviction for sexual abuse of a child, the trial court sentenced appellant to five years in prison. In his sole point of error, appellant contends he was denied a speedy trial. We affirm.

### Facts

The following dates are relevant to appellant's speedy-trial claim:

| | |
|---|---|
| July 22, 1999: | Appellant allegedly sold 2.9 grams of crack cocaine to Officer M. Weinel. |
| February 28, 2000: | Officer Weinel filed a complaint with the Harris County District Attorney's Office. |
| May 15, 2000: | Appellant was indicted. |
| June 26, 2000: | Appellant was arrested. |
| July 6, 2000: | Appellant filed a motion to set aside the indictment, alleging a violation of his speedy-trial rights. The case was reset to August 3, 2000. |
| July 14, 2000: | Appellant's wife died. |
| August 3, 2000: | Agreed reset to August 25, 2000. |
| August 25, 2000: | Agreed reset to September 1, 2000. |
| September 1, 2000: | Trial court heard, and denied appellant's motion. Agreed setting for jury trial on October 2, 2000. |
| October 2, 2000: | Case reset to October 4, 2000. |
| October 5, 2000: | Case reset to October 13, 2000. |
| October 13, 2000: | Case reset to October 16, 2000. |
| October 16, 2000: | Agreed setting for jury trial on November 6, 2000. |
| November 6, 2000: | Appellant pled guilty and was sentenced. |

### Right to a Speedy Trial

In his sole point of error, appellant contends he was denied his right to a speedy trial. The right to a speedy trial is guaranteed by the Sixth Amendment of the United States Constitution and is applicable to the states through the Fourteenth Amendment. *Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). The Texas Constitution and Code of Criminal Procedure independently guarantee a speedy trial, but Texas courts look to the federal courts to determine constitutional rights and apply the *Barker* test for speedy-trial analysis. *Harris v. State,* 827 S.W.2d 949, 956 (Tex. Crim.App.1992); *see* TEX. CONST. art. I, § 10; TEX.CODE CRIM. PROC. ANN. art. 1.05 (Vernon Supp.2002). The *Barker* test requires that the following factors be balanced against each other to determine whether appellant's constitutional right to a speedy trial has been violated: (1) the length of delay; (2) the reason for the delay; (3) appellant's assertion of his speedy-trial right; and (4) prejudice to appellant from the delay. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. As the reviewing court, we apply an abuse of discretion standard to review factual issues,

and a *de novo* standard to review legal issues. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex.Crim.App.1999).

### A. Length of Delay

■ Initially, we note that appellant contends the nearly seven-month delay between his arrest and his indictment was prejudicial. This argument was presented at the speedy-trial hearing, and the trial court correctly held that pre-accusation delay is not relevant to the speedy-trial analysis. *See United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). The Sixth Amendment speedy-trial provision does not apply until the defendant has been accused because statutes of limitations protect defendants against pre-accusation delay. *Id.* A speedy-trial claim will not be heard until a prima facie unreasonable period of time has passed after accusation. *Harris*, 827 S.W.2d at 956.

■ The State agrees with appellant that the length of delay from accusation until his trial, over eight months, is presumptively unreasonable. *See Harris*, 827 S.W.2d at 956 (noting that courts generally hold delays of eight months or longer presumptively unreasonable and trigger speedy-trial analysis). Length of delay is merely the triggering mechanism of the speedy-trial analysis, however. *Id.* The State further notes that the speedy-trial motion was filed only 10 days after arrest, and from appellant's first court appearance until the day he pled guilty, there were six resets over four months. This presumptively unreasonable delay nevertheless triggers evaluation under *Barker*. *See Barker*, 407 U.S. at 530, 92 S.Ct. at 2192; *see also Munoz*, 991 S.W.2d at 821.

### B. Reason for Delay

■ The State bears the burden to justify a presumptively unreasonable de-

lay. *See Phillips v. State*, 650 S.W.2d 396, 400 (Tex.Crim.App.1983). A deliberate attempt to delay the trial to hamper the defense should weigh heavily against the government. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. A negligent delay should weigh less heavily, but nevertheless should be considered because the ultimate responsibility for such circumstances must rest with the State rather than the defendant. *Id.*

■ The State points to appellant's filing his motion for speedy trial 10 days after his arrest, and the multiple resets after the first court appearance, but gives no explanation for the delay from accusation until the first court appearance. The State explains the pre-accusation delay by stating that Officer Weinel had appellant's house under surveillance and was waiting for another opportunity to make a drug buy. As noted earlier, however, pre-accusation delay is not relevant to the speedy-trial analysis because of the protections that the statute of limitations already offers. *See Marion*, 404 U.S. at 313, 92 S.Ct. at 459.

Although the case was first reset because the State was unprepared for trial, all remaining resets were agreed to by both the State and appellant. Because the State was entirely responsible for the initial delay, and offers no other reason for that delay, this factor weighs slightly against the State.

### C. Assertion of Speedy Trial Right

■ The lack of a timely demand for a speedy trial indicates that a defendant may not actually want a speedy trial. *Harris*, 827 S.W.2d at 957 ("[A]ppellant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial."). Although the State concedes that appellant sought a speedy

trial at his first court appearance, the record reflects appellant moved to have his case set aside for failure to have a speedy trial. A motion to dismiss notifies the State and the court of a speedy-trial claim, but a defendant's motivation in asking for a dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim. *Phillips*, 650 S.W.2d at 401.

■ Appellant filed his motion to set aside the indictment less than two months after his indictment. Although appellant testified at the speedy-trial hearing that he was asserting his speedy-trial rights from the very beginning, the record does not reflect a request for a speedy trial until the hearing, and the trial court subsequently granted appellant's request for a speedy trial less than four months after indictment and less than nine weeks after appellant's arrest. These facts tend to indicate that appellant was seeking a dismissal, and not a speedy trial, and thus this factor weighs against appellant.

### D. Prejudice to Appellant

■ The final *Barker* factor focuses on whether appellant suffered prejudice as a result of the delay. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. Prejudice is assessed in light of these rights: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that his defense will be impaired. *Id.* Although no single factor is necessarily more important than the other factors, case law indicates that "impairment of the defense" is the "most serious" factor. *Munoz*, 991 S.W.2d at 828.

Appellant contends he was prejudiced because he was "locked up," and his wife died while he was incarcerated. Although appellant does not assert any other specific oppressive pretrial incarceration, or partic-

ular anxiety and concern, these two factors are applicable to appellant, given that he was unable to attend his wife's funeral, or otherwise attend to personal affairs while incarcerated. *See Harris*, 827 S.W.2d at 957 ("[T]he first and second interests are, of course, applicable to appellant, as they would be to any defendant . . .").

Appellant attempted to explain the prejudice he suffered during his incarceration:

Defense Counsel: And the—by not having a speedy trial, have you been hurt in any way, prejudiced in any way?

Appellant: I've been locked up.

Defense Counsel: But has one close to you—

Appellant: My wife has passed away since I've been in here.

Defense Counsel: She would have been a witness for you, would she not?

Appellant: Yes, sir, she would have.

Defense Counsel: By her not being able to be a witness you think you've been harmed by that?

Appellant: Yes, sir, I have.

The following exchange took place during cross-examination:

Prosecutor: Your wife, if she had been available as a witness, would have been able to testify to what?

Appellant: To my behalf that I have been a hard worker, reliable citizen.

Prosecutor: She would be a character witness?

Appellant: Yes, ma'am.

Prosecutor: But she wasn't present and there is nothing about the facts of this individual case on her own first hand knowledge?

Appellant: I don't understand.

Prosecutor: Was she present when the case that you have been charged with occurred?

Appellant: Yes.

Prosecutor: She was?

Appellant: We were living together. We were living—

Prosecutor: Was she there at the house when this case that you are charged with occurred?

Appellant: I presume she was. There was nothing that I know of that happened.

Prosecutor: You recall when the police officer came out and this case occurred?

Appellant: No, ma'am.

Prosecutor: So you are saying that never happened?

Appellant: No, ma'am.

Prosecutor: So you can't make a representation to the Court whether or not she's a material witness to this case?

Appellant: If she was here she would be a material witness.

Prosecutor: Can you tell the Judge she was there on July 22 of 99 when this offense occurred?

Appellant: Yes, I know she was.

Prosecutor: And she was present when the officer came—

Appellant: If there was an officer there.

Prosecutor: So you're not even saying an officer came?

Appellant: No, ma'am.

Prosecutor: Pass the witness.

■■■■■■■ If a defendant makes a prima facie showing of prejudice, the State must prove that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay. *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim.App.1973). A claim of prejudice based on the unavailability of witnesses requires an appellant to show: (1) the witness was unavailable at the time of trial; (2) the testimony that would have been offered was relevant and material to the defense; and (3) due diligence was exercised in an attempt to locate the witnesses for trial. *Phipps v. State*, 630 S.W.2d 942, 947 (Tex.Crim.App.1982); *Parkerson v. State*, 942 S.W.2d 789, 792 (Tex.App.-Fort Worth 1997, no pet.); *Meyer v. State*, 27 S.W.3d 644, 650 (Tex.App.-Waco 2000, pet. ref'd). Because prejudice is obvious when witnesses die or disappear during a delay, a defendant need only show that the prospective witness was believed to be material to the case, not that the witness would have testified favorably to the defense. *Webb v. State*, 36 S.W.3d 164, 174–75 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (citing to *Phillips*, 650 S.W.2d at 402; *Crowder v. State*, 812 S.W.2d 63, 67 (Tex.App.-Houston [14th Dist.] 1991, no pet.)). In determining if the witness is believed to be material to the case, a court can consider whether there is any evidence that the defendant attempted to obtain the witness's statement during the delay. *Webb*, 36 S.W.3d at 175 (citing to *Broussard v. State*, 978 S.W.2d 591, 597 (Tex.App.-Tyler 1997, pet. ref'd); *State v. Kuri*, 846 S.W.2d 459, 467 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd)).

■■■■ In *Webb*, the defendant testified that the deceased witness would have corroborated his testimony, but the record indicated the defendant did not interview the witness, take a sworn statement, or arrange for subpoena when trial was less than two weeks away. *Webb*, 36 S.W.3d at 175. Appellant testified on direct examination that he had been prejudiced and harmed by his wife's death, but did not testify that his wife would be a material witness or describe her testimony. Then, on cross-examination, appellant testified, on the one hand, that his wife was present when the events occurred, and, on the other hand, testified that he "presumed she was" there, but "[t]here was nothing that I know of that happened." Appellant also testified that, if his wife "was here[,] she would be a material witness."

Appellant did not demonstrate what his wife would have testified to, or why her testimony was material. Appellant did not show that he believed his wife was a material witness because he made no showing that he tried to contact her, or obtain her statement. *See Webb*, 36 S.W.3d at 175. Appellant has not made a prima facie showing of prejudice. Even if he had shown prejudice, he has not demonstrated prejudice beyond that which ensued from the ordinary and inevitable delay. *See Munoz*, 991 S.W.2d at 826. This factor weighs against appellant.

## E. Balancing the *Barker* Factors

 In balancing the *Barker* factors in this case, we conclude the State did not violate appellant's right to a speedy trial. The delay was presumptively excessive, and the State was initially responsible for the delay, but appellant first filed a motion to set aside the indictment less than two months after indictment and then agreed to multiple resets of the case. When appellant requested a speedy trial four months after indictment, the trial court granted the request. Moreover, appellant has not made a prima facie showing of prejudice. Appellant did not show how his wife would be a material witness, and he did not show any attempt to communicate with his wife to determine what her testimony would have been. He has not demonstrated how he suffered prejudice beyond that which ensued from incarceration during the ordinary and inevitable delay. Balancing all these factors, we hold that appellant's speedy-trial rights were not violated.

## Conclusion

We affirm the judgment of the trial court.