Opinion issued June 5, 2008
















 

 

 

 

Opinion issued June 5, 2008

 

 

 

                                                                        

 

                                                

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 


 



NO.   01-07-00861-CR

 




 
 
 
 
 
 
 


 



ORLANDO CROUBLET, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 

 



On
Appeal from the 208th District Court

Harris
County, Texas

Trial Court Cause
No. 373098

 

 



 MEMORANDUM
OPINION

 

Orlando
Croublet was indicted on a murder charge in 1983.  He was arrested in December 2005, and stood
trial in July 2007.  A jury convicted
Croublet for murder and assessed punishment at ten years’ confinement.  Tex.
Penal Code Ann. § 19.02 (Vernon 2003). 
Croublet appeals, contending that his conviction should be reversed and
the cause dismissed because he was denied a speedy trial in violation of the
Sixth and Fourteenth Amendments to the United States Constitution and Article
I, section 10 of the Texas Constitution. 
U.S. Const. amend. VI & XIV; Tex. Const. Art. I, § 10.  We affirm. 


Background

Donald
Blount, a homeless man, met Croublet in the fall of 1982.  Blount and Croublet spent time together
nearly every day until January 16, 1983. 
On that day, Croublet, Blount, and some other men gathered in Eduardo
Chaviano’s apartment to drink beer and smoke marijuana.  At some point, Blount went to the
refrigerator to get another beer.  When
he turned around, he found Croublet standing behind him wielding a butcher
knife.  For no apparent reason, Croublet
stabbed Blount in the chest and back. 
Blount fled and received medical treatment for a collapsed lung.  

          After Blount escaped, Croublet turned
to Chaviano.  A neighbor who was moving
out of his apartment saw Chaviano outside near Chaviano’s apartment struggling
to get away from Croublet, who eventually pushed Chaviano back into the
apartment. The neighbor continued to hear sounds of the struggle coming from
the apartment until someone inside turned up the volume on a stereo enough to
mask them.      

          When the police officers arrived, they
found Chaviano’s body in the back bedroom. 
Police Detective Hernandez interviewed several witnesses and learned that
Croublet and Chaviano had been working on a car in the apartment complex
parking lot earlier in the day.  The
detective located and searched the car. 
He found:

·       
a
traffic ticket issued by the Fort
 Bend County
police to “Orlando Croublet,” and noting his birth date as “11/15/56”;

 

·       
Croublet’s
1981 Form 1040A tax return, dated March 13, 1982, and containing Croublet’s
social security number;

 

·       
Croublet’s
1981 W-2 form, which reflected employment at Memorial
Hospital in Houston; and

 

·       
a
registered letter, addressed to Croublet, bearing an April 1982 postmark.

 

Detective
Hernandez tagged these items and placed them in the police department’s
property room.  Later, Detective
Hernandez also obtained Croublet’s photograph and other information Croublet
had provided to the Texas Department of Public Safety when he obtained his
driver’s license.  The DPS data also
showed Croublet’s birth date as “11/15/56,” matching the date appearing on the
traffic ticket found in the car.  

          The following day, Detective Hernandez
began searching for Croublet.  He
interviewed some people who had shared a residence with Croublet, and learned
that Croublet had recently been staying at two other locations in the same
general area.  Detective Hernandez
conducted surveillance at both locations, but did not find Croublet.  Through on-site interviews, however,
Detective Hernandez learned that Croublet had been at those locations.  This information, coupled with the fact that
Croublet “had been seen at so many places staying where he didn’t belong,” led
Detective Hernandez to conclude that Croublet “was doing everything he could to
avoid being arrested.”  Eventually,
Detective Hernandez ran out of leads and was unable to find Croublet.  

          Detective Hernandez admitted that he
did not attempt to locate Croublet at any of the addresses shown on the 1981
tax documents or April 1982 registered letter that he found in the car.  After obtaining a warrant for Croublet’s
arrest in late January 1983, Hernandez spent additional time interviewing
Croublet’s neighbors, employers, and apartment managers, but again, had no
success in locating Croublet.  

          A grand jury indicted Croublet for the
murder of Chaviano in February 1983. 
Additional investigators attempted to locate Croublet several times
during 1983, also without success. 
Detective Hernandez eventually entered the warrant and other information
concerning Chaviano into the National Crime Information Center (NCIC)
database.  In making the entry, Detective
Hernandez used the “11/15/56” birth date that appeared on the traffic ticket,
and did not include Croublet’s social security number or any other information
from the tax documents found in the car. 


          In the years following these initial
efforts to locate Croublet, the Harris County Sheriff’s Office conducted an
annual search by processing information through various databases that reveal
activities such as applying for driver’s license, applying for government
programs, or being arrested.  The
Sheriff’s Office used only the information entered by Detective Hernandez in
attempting to locate Croublet through this search.  

          In November 2004, Sergeant A. Cruz,
a member of the Houston Police Department’s cold case murder squad, was
assigned to investigate and inventory items in the case file concerning the outstanding
warrant for Croublet.  Sergeant Cruz
discovered that the NCIC, acting under its own rules, had dropped the warrant
from the database once his driver’s license permit expired.  

At Sergeant
Cruz’s request, the NCIC reinstituted the warrant in its database.  When Sergeant Cruz reviewed the case file,
she located the tax forms in it and supplemented the NCIC entry with Croublet’s
social security number.  After running a
database search with the social security number, she discovered that Croublet, beginning
with his arrest in Miami in the spring of 1984,
had acquired a lengthy criminal history under several aliases in Florida, Georgia,
Illinois, and, more recently, in Louisiana.  After locating Croublet in Lousiana, Sergeant
Cruz had the warrant for Croublet’s arrest renewed.  Working with local Louisiana
police, Sergeant Cruz had Croublet placed under arrest, served with the
warrant, and returned to Texas
for prosecution in December 2005.  

The trial
court appointed counsel for Croublet in January 2006.  Croublet first moved to dismiss the case
against him for want of a speedy trial in March 2007.  After an evidentiary hearing, the trial court
denied the motion, and trial began in July 2007.  In the middle of trial, the court decided to
revisit Croublet’s motion and, outside the presence of the jury, took
additional evidence, including testimony from Croublet himself, concerning the
information that was available to the police at the time of their initial
investigation into the murder.  

During this
supplemental hearing, Croublet testified that his actual birth date is January
15, 1956, but admitted that his Texas
driver’s license bears a birth date of November 15, 1956.  Croublet also denied knowing of the
outstanding warrant until he was arrested on that charge in December 2005.  Ultimately, however, the trial court decided
to maintain its prior ruling.  After
Croublet’s conviction and sentencing, he timely appealed.




Discussion

Legal Standard and Standard of Review

In his sole issue on appeal, Croublet contends that the trial court erred
in denying his motion to dismiss because the lapse of twenty-four years between
his indictment and prosecution violated his constitutional right to a speedy
trial.  The Sixth Amendment to the
Constitution of the United
 States provides that, “[i]n all criminal
prosecutions, the accused shall enjoy the right to a speedy . . . trial.” U.S. Const. amend. VI. The right to a
speedy trial is fundamental and is imposed on the states by the Due Process
Clause of the Fourteenth Amendment.  Barker v. Wingo, 407 U.S. 514, 515–16, 92 S. Ct.
2182, 2184–85 (1972).  If a violation of
the speedy trial right is established, the only possible remedy is dismissal of
the prosecution.  Strunk v. U.S.,
412 U.S. 434, 440, 93 S. Ct. 2260, 2263 (1973).  “The Texas Constitution and Code of Criminal
Procedure independently guarantee a speedy trial, but Texas courts look to the federal courts to
determine constitutional rights and apply the Barker test for speedy-trial analysis.”  Ervin
v. State, 125 S.W.3d 542, 545 (Tex. App.—Houston [1st Dist.] 2002,
no pet.) (citations omitted).  The Barker test requires us to balance the
following factors to determine whether an defendant’s constitutional right to a
speedy trial has been violated: (1) the length of delay; (2) the reason for the
delay; (3) the defendant’s assertion of his speedy-trial right; and (4)
prejudice to the defendant from the delay. 
Id.
(citing Barker, 407 U.S. at 530, 92 S. Ct.
at 2192).

 “In conducting a speedy trial analysis under the Barker
test, we review legal issues de novo but give deference to a trial court’s
resolution of factual issues.”  Kelly v. State, 163 S.W.3d 722, 726 (Tex. Crim. App.
2005).  We defer not only to a trial
court’s evaluation of the reliability of documentary evidence and the
credibility of witnesses, but also to the trial court’s ability to draw
inferences from undisputed facts.  Id.
at 726–27.  If the ruling is supported by the record and correctly applies the law,
we must affirm.  

Application of Barker Test

Length of delay

The length
of the delay is measured from the time the defendant is arrested or formally
accused.  Dragoo v. State, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003); see Barker,
407 U.S. at 530, 92 S. Ct. at 2192. 
“Courts deem delays approaching one year to be ‘unreasonable enough to
trigger the Barker enquiry.’”  Dragoo,
96 S.W.3d at 314.  The twenty-four year
delay in this case “weighs heavily in favor of finding a violation of the
speedy trial right.”  Id.


Reason for delay  

Under the
next balancing factor, we must consider whether the reason for the lenthy delay
between indictment and trial weighs against the State or Croublet.  A deliberate attempt to delay the trial in
order to hamper the defense weighs heavily against the government.  Barker,
407 U.S. at 531, 92 S. Ct. at 2192.  A
delay attributable to the defendant, however, may constitute a waiver of his
right to a speedy trial and, therefore, weighs heavily against him.  See State v. Munoz, 991 S.W.2d 818, 822
(Tex. Crim. App. 1999); Webb v. State,
36 S.W.3d 164, 173 (Tex. App.—Houston
[14th Dist.] 2000, pet. ref’d). A more neutral reason, such as negligence or
overcrowded courts, or no reason, also weighs against the government, though
less heavily.  Barker, 407 U.S.
at 531, 92 S. Ct. at 2192; Dragoo, 96 S.W.3d at 314.  A valid reason, such as a missing witness,
will justify the delay and weigh in the government's favor.  Barker,
407 U.S. at 531, 92 S. Ct. at 2192; Dragoo,
96 S.W.3d at 313–14.  The State bears the
initial burden of justifying a lengthy delay.  Emery v.
State, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994); Turner v. State, 545 S.W.2d 133, 137–38 (Tex. Crim. App. 1976).

The
evidence before the trial court supports the conclusion that Croublet’s own
conduct contributed significantly to the delay. 
The State introduced evidence that, between 1983 and his arrest for
Chaviano’s murder in 2005, Croublet had used ten different names and three
different birth dates, and had acquired criminal records in Florida, Georgia,
Illinois, and Louisiana.  Between January
1983 and January 1984, the State attempted to locate and serve Croublet with
the warrant six times, and continued to make efforts to locate Croublet through
1998. 

Croublet
asserts that this factor should not count against him because, according to his
own testimony, he was unaware of the pending indictment until his apprehension
in 2005.  See Doggett v. U.S.,
505 U.S. 647, 653–54, 112 S.
 Ct. 2686, 2691 (1992); Phillips
v. State, 650 S.W.2d 396, 400 (Tex. Crim. App. 1983).  The trial court, however, was entitled to
discount Croublet’s testimony on this issue. 
Circumstantial evidence—including the reported sightings of Croublet in
numerous locations shortly after the police began investigating Chaviano’s
death, Croublet’s flight from Texas, residence in various states, and the use
of numerous aliases—supports a reasonable inference that Croublet knew that the
police were seeking his arrest and sought to avoid his arrest and
prosecution.  A defendant’s decision to
remain a fugitive without asserting his right to a speedy trial weighs heavily
against him.  Lott v. State, 951 S.W.2d 489, 495 (Tex. App.—El Paso 1997, pet.
ref’d); see Doggett,
505 U.S. at
653, 112 S. Ct. at 2691 (“Were
[it] true [that the defendant knew of his indictment years before his arrest], Barker’s
third factor, concerning invocation of the right to a speedy trial,
would be weighed heavily against him.”); U.S.
v. Olaya, No. 06-20376, 2007 WL 2376620, at *3 (5th Cir. Aug. 21, 2007) (concluding
that evidence
defendant obtained Florida driver’s license under an alias and false birth date
instead of renewing his Texas driver’s license supported district court’s
finding that defendant knew of pending charges and took steps to evade capture,
so that delay of more than thirteen years between indictment and trial did not
weigh heavily against government); see
also Wilson v. Mitchell, 250 F.3d 388, 395 (6th Cir. 2001) (holding
that delay
of twenty-two years did not warrant habeas relief because of defendant’s active
evasion of arrest; defendant was found more to blame for delay where evidence
supported trial court’s conclusion that defendant was “a fugitive who
repeatedly changed his identity, name, physical appearance, and whereabouts to
avoid being brought to trial on the charges”).

Croublet
faults the State for the delay, citing its failure to (1) use the employer
information and Social Security number on his 1981 income tax W-2 form and
return, which the police had collected during the investigation; (2) realize
the discrepancy between the birth date written on a traffic ticket issued to
Croublet by the Fort Bend Police Department, which was also collected in the
investigation, and the birth date on Croublet’s tax documents; or (3)
investigate whether he was still employed with the same hospital named on his
1981 tax documents.  While in hindsight,
it appears that the State could have been more thorough in its investigation at
the outset, the trial court was not required to conclude that the search was
less than a reasonably diligent effort and balance this factor against the
State as a result.  Based on the record,
the trial court could have reasonably found that the State’s inability to
apprehend Croublet had more to do with his active effort to evade arrest and
prosecution than with the State’s failure to use Croublet’s social security
number and a different birth date in attempting to locate him.  Moreover, the fact that the State did not try
to locate Croublet based on two-year-old tax records and a year-old mailing
address does not demonstrate negligence. 
Notably, no testimony or documentation suggests that Croublet was still
working for any employer identified on his 1981 tax documents either on or
after the date the Chaviano was murdered. 
Based on the evidence, the trial court could have reasonably found that
Croublet was more to blame for the delay. 
See  Doggett,
505 U.S. at 651, 112 S. Ct. at 2690 (inquiry is not who is blameless, but
rather, who is more to blame for delay).  Thus, this factor weighs against Croublet.

Defendant’s assertion of his right to speedy
trial

 Croublet did not demand a speedy trial until
more than a year after his arrest.  A
defendant’s lack of a timely demand for a speedy trial strongly indicates that
he was not prejudiced by lack of a speedy trial.  Dragoo,
96 S.W.3d at 314 (citations omitted). 
The fact that Croublet sought to dismiss based on denial of the right to
a speedy trial, rather than to enforce his right, does not excuse his late
request, particularly here, where the basis of the motion is delay from the
time of indictment to his arrest.  See Barker, 407 U.S. at 531–32, 92 S. Ct.
at 2192–93 (observing that strength of defendant’s efforts will be particularly
affected by personal prejudice, which is not always readily identifiable, that
he experiences; “[t]he more serious the deprivation, the more likely a
defendant is to complain”); Shaw v. State,
117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (noting that defendant’s failure to
make timely demand for speedy trial indicates strongly that he was not
prejudiced by not having one).  The
evidence supporting the reasonable inference that Croublet knew that he was
wanted for Chaviano’s murder immediately after committing the crime likewise
supports the finding that Croublet delayed more than 24 years in asserting the
right to a speedy trial.  Thus, the
record supports the conclusion that this factor also weighs against
Croublet.  

Prejudice to the defendant resulting from the
delay

Croublet
contends that the incurable prejudice he suffered as a result of the delay
deprived him of presenting any defense whatsoever.  In assessing the weight of and responsibility
for this factor, the court “must do so in light of the interests of defendants which the speedy trial right was designed to protect: (1) to prevent oppressive
pretrial incarceration; (2) to minimize the accused’s anxiety and concern; and
(3) to limit the possibility that the accused’s defense will be impaired.”  Dragoo,
96 S.W.3d at 315 (citing Barker,
407 U.S. at 532, 92 S. Ct. at 2182).

As grounds
for his contention of prejudice, Croublet complains that (1) he has lost all of
his potential witnesses, including character and alibi witnesses; (2) he might
have proven things that he now cannot prove through business records if he had
been able to obtain them promptly, but the records were no longer available;
(3) prosecution witnesses that would have been impeachable based on their prior
criminal records were no longer impeachable because of the lapse in time; and
(4) Croublet was not impeachable then, but was “so horribly impeachable in
2007, he could not afford to take the stand.” 
These generalized complaints do not support a showing of prejudice.  In contending that prejudice results from witness
unavailability, a defendant must demonstrate that: (1) the witness was
unavailable at the time of trial; (2) the witness’s testimony may be relevant
and material to the defense; and (3) the defendant exercised due diligence in
an attempt to locate the witness at the time of trial.  See
Phipps v. State, 630 S.W.2d 942, 947 (Tex. Crim. App. 1982); Johnson v. State, 975 S.W.2d 644, 652
(Tex. App.—El Paso 1998, pet. ref’d). 
Croublet failed to make this showing and accordingly, has not shown
prejudice.  See Phipps, 630 S.W.2d at 947; Ervin,
125 S.W.3d at 548; Parkerson v. State,
942 S.W.2d 789, 792–93 (Tex. App.—Fort Worth 1997, no pet.).  Croublet likewise failed to substantiate his
complaint concerning unavailable business records with any specific
showing.  “Where the defendant does not
present evidence of particularized prejudice suffered as a result of the
passing of time between arrest and assertion of his or her right to a speedy
trial, such lack of evidence will be considered against the defendant’s claim
of prejudice suffered.”  Harvey v. State, 173 S.W.3d 841, 846 (Tex. App.—Texarkana 2005, no pet.) (citing Harris v. State, 827 S.W.2d 949, 957
(Tex. Crim. App. 1992); Holmes v. State,
938 S.W.2d 488, 491 (Tex. App.—Texarkana 1996, no pet.)).  

Conclusion

          Taking into account all the Barker factors, we hold that Croublet
has failed to show that his constitutional right to a speedy trial was violated,
and thus the trial court did not err in denying Croublet’s motion to dismiss
for lack of a speedy trial.  We therefore
affirm the judgment of the trial court.

 

Jane Bland

                                                          Justice

 

Panel consists of Justices Taft, Jennings and Bland.

Do not publish.  See Tex.
R. App. P. 47.2(b).