

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00474-CR

Raymond **DANIELS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 437th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CR3242
Honorable Mary D. Roman, Judge Presiding[1]

Opinion by:    Beth Watkins, Justice

Sitting:    Rebeca C. Martinez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: March 13, 2019

AFFIRMED

Pursuant to a plea agreement, appellant Raymond Daniels pled nolo contendere to possession of a controlled substance, less than one gram, and the trial court sentenced him to 180 days in jail. On appeal, Daniels contends the trial court erred in denying his pretrial speedy trial motion. We affirm the trial court's judgment.

---

[1] The Honorable Lori Valenzuela is the judge of the 437th Criminal District Court, Bexar County, Texas. However, the judgment in this case was signed by the Honorable Mary D. Roman, who at the time of the judgment was retired and sitting by assignment.

## BACKGROUND

In August 2017, police were conducting undercover surveillance on a residence. During the surveillance, officers found Daniels standing next to a vehicle at the residence. As they approached, officers saw Daniels remove a bag from his front pocket and throw it on the ground. The officers detained Daniels and retrieved the bag, which was later determined to contain cocaine and methamphetamine.

Daniels was arrested and subsequently indicted for possession of cocaine and methamphetamine. The indictment also included a habitual offender enhancement allegation. After indictment, Daniels filed a motion to dismiss for failure to afford him a speedy trial. The motion was denied, and thereafter, Daniels and the State entered into a plea agreement. Pursuant to the plea agreement, Daniels pled guilty to possession of cocaine, the State dismissed the count of the indictment alleging possession of methamphetamine and the enhancement allegation, and the trial court sentenced Daniels to 180 days' confinement. Thereafter, Daniels perfected this appeal.

## ANALYSIS

On appeal, Daniels raises a single point of error. Daniels contends his constitutional right to a speedy trial was violated, mandating reversal of his conviction. The State counters, arguing the trial court properly denied Daniels's speedy trial motion.

### *Standard of Review*

This court reviews a trial court's ruling on a motion to dismiss based on a speedy trial claim using a bifurcated standard of review. *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014); *Huff v. State*, 467 S.W.3d 11, 26 (Tex. App.—San Antonio 2015, pet. ref'd). We give almost complete deference to a trial court's historical factual findings that are supported by the record and to its reasonable inferences drawn from those facts. *Gonzales*, 435 S.W.3d at 808–09;

*Huff*, 467 S.W.3d at 26. Moreover, we view all of the evidence in favor of the trial court's ultimate ruling. *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008); *Huff*, 467 S.W.3d at 26. When a trial court evaluates the evidence at a speedy trial hearing, it may completely disregard witness testimony based on credibility and demeanor evaluations, even if the testimony is uncontroverted. *Cantu*, 253 S.W.3d at 282; *Huff*, 467 S.W.3d at 26. The trial court may also disbelieve any evidence as long as it has a "reasonable and articulable reason for doing so." *Cantu*, 253 S.W.3d at 282.

In contrast to the foregoing, this court must conduct a de novo review in determining whether there was sufficient presumptive prejudice to proceed to a *Barker v. Wingo* analysis and in weighing the factors set out in that case because these are legal questions. *Gonzales*, 435 S.W.3d at 808–09; *Huff*, 467 S.W.3d at 26–27; *see generally Barker v. Wingo*, 407 U.S. 514 (1972). As the Texas Court of Criminal Appeals stated in *Cantu*, "[r]eview of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but '[t]he balancing test as a whole ... is a purely legal question.'" 253 S.W.3d at 282 (quoting *Zamorano v. State*, 84 S.W.3d 643, 648 n.19 (Tex. Crim. App. 2002) (en banc)).

### *Application*

Under the United States Constitution, which is applicable to the states through the Fourteenth Amendment, a defendant is guaranteed the right to a speedy trial. U.S. CONST. amends. VI, XIV; *Gonzales*, 435 S.W.3d at 808; *Huff*, 467 S.W.3d at 27. Speedy trial claims are determined on a case-by-case basis, with the reviewing court weighing and balancing the *Barker* factors: (1) length of the delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the accused. 407 U.S. at 530; *Gonzales*, 435 S.W.3d at 808. The State must justify the length of the delay, but the defendant must prove he asserted the right and was prejudiced by the delay. *Cantu*, 253 S.W.3d at 281. The defendant's burden to establish assertion and prejudice is said to "var[y]

inversely" with the State's degree of culpability for the delay. *Id.* (quoting *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993)). Accordingly, "the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81.

A *Barker* analysis is not triggered unless the defendant makes an initial showing that the delay is "presumptively prejudicial." *Gonzales*, 435 S.W.3d at 808 (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)); *Cantu*, 253 S.W.3d at 281 (same). There is no bright line rule to determine when a delay is so unreasonable that it is "presumptively prejudicial." *Cantu*, 253 S.W.3d at 281. However, eight months has generally been considered the minimum to trigger a speedy trial analysis. *Zamorano*, 84 S.W.3d at 649 n.16 (citing *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992) (en banc)); *id.* at 656 (Keller, P.J., dissenting) (citing *Doggett*, 505 U.S. at 657–58) (holding one year generally considered threshold for speedy trial claim); *Knox v. State*, 934 S.W.2d 678, 681 (Tex. Crim. App. 1996) (stating eight-month delay generally sufficient to trigger speedy trial claim); *Russell v. State*, 90 S.W.3d 865, 872 (Tex. App.—San Antonio 2002, pet. ref'd) (stating that "[g]enerally, delay of eight months or longer is considered 'presumptively prejudicial'" and triggers speedy trial analysis); *Schenekl v. State*, 996 S.W.2d 305, 312 (Tex. App.—Fort Worth 1999), *aff'd*, 30 S.W.3d 412 (Tex. Crim. App. 2000); *see also Pete v. State*, 501 S.W.2d 683, 687 (Tex. Crim. App. 1973) (holding four-month delay is not presumptively prejudicial).[2] If we find the delay is presumptively prejudicial, we must then analyze the speedy trial claim by first weighing the strength of the remaining factors and then balancing their relative weights in light of "the conduct of both the prosecution and the defendant." *Id.* (quoting *Barker*,

---

[2] *See also Quigley v. State*, 02-15-00441-CR, 2017 WL 930066, at *12 n.3 (Tex. App.—Fort Worth Mar. 9, 2017, no pet.) (mem. op., not designated for publication) (holding speedy trial claim waived, but if not waived, recognizing appellant would not prevail because length of delay was less than seven months, which is not presumptively prejudicial and therefore no analysis under *Barker* required).

407 U.S. at 530). In other words, the *Barker* factors are related and must be considered together along with any other relevant circumstances, and no one factor is either necessary or sufficient to find a violation. *Id.* Thus, on review we must "engage 'in a difficult and sensitive balancing process' in each individual case" to determine whether a dismissal in favor of the defendant is warranted. *Id.* (quoting *Barker*, 407 U.S. at 533); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003) (citing *Barker*, 407 U.S. at 530).

### 1. *Length of Delay*

The length of delay is measured "from the time the accused is arrested or formally accused." *Gonzales*, 435 S.W.3d at 809. When the delay is longer than the minimum needed to trigger an analysis under *Barker*, the length of the delay weighs against the State. *Id.* Moreover, "the longer the delay, the more the defendant's prejudice is compounded" because "'the presumption that pretrial delay has prejudiced the accused intensifies over time.'" *Id.* (quoting *Zamorano*, 84 S.W.3d at 649) (quoting *Doggett*, 505 U.S. at 652).

Here, the State concedes the delay in this case is presumptively prejudicial so as to trigger the *Barker* analysis. We agree. Police arrested Daniels on August 16, 2017, and the hearing on his speedy trial motion was held May 7, 2018 — a time frame of slightly more than eight months. Because a little more than eight months passed between the time of arrest and the date the motion was heard, the delay was beyond the minimum needed to trigger the *Barker* inquiry. *See Zamorano*, 84 S.W.3d at 649. However, Daniels's plea hearing was held a mere eleven days after the hearing on motion for speedy trial and the total length of the delay is the bare minimum for a delay to be considered presumptively prejudicial.[3] *See id.* at 649 n.26; *id.* at 656 (Keller, P.J.,

---

[3] In *Rountree v. State*, the First Court of Appeals stated a delay of seven months has never been held to be a constitutional violation. No. 01-90-00392-CR, 1991 WL 84056, at *3 (Tex. App.—Houston [1st Dist.] May 23, 1991, no pet.) (not designated for publication).

dissenting); *Russell*, 90 S.W.3d at 872; *Schenekl*, 996 S.W.2d at 312. Although this first *Barker* factor weighs against the State, "the time period is hardly the overwhelming amount of time that courts have found to weigh heavily against the government." *Zamorano*, 84 S.W.3d at 656 (Keller, P.J., dissenting). Accordingly, we hold the first factor weighs slightly against the State. *See id.*; *see also Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016) (recognizing it is when delay stretches "far beyond the minimum needed to trigger the inquiry" that length of delay weighs heavily against State).

### 2. *Reason for Delay*

With regard to the second *Barker* factor — reason for the delay — we look to the reasons put forth by the State to justify the delay. *Gonzales*, 435 S.W.3d at 809 (citing *Barker*, 407 U.S. at 531); *Huff*, 467 S.W.3d at 28. According to the Texas Court of Criminal Appeals, when assessing the reasons provided by the State for the delay, the reviewing court must allocate different weights to different reasons. *Gonzales*, 435 S.W.3d at 809 (citing *Zamorano*, 84 S.W.3d at 649); *Huff*, 467 S.W.3d at 28.

The reason for the delay, if any, determines its weight. *See Balderas*, 517 S.W.3d at 768; *Zamorano*, 84 S.W.3d at 649. Deliberate delays by the State should be weighed heavily against the State. *Zamorano*, 84 S.W.3d at 649. Neutral reasons for the delay, e.g., negligence or overcrowded courts, are also weighed against the State, albeit less heavily. *Id.* Valid reasons for the delay, e.g., a missing witness, are justified and not weighed against the State. *Id.* Delays attributable to the defendant, e.g., announcements of "not ready," are not counted against the State. *Id.* If the State fails to offer a reason for the delay, this weighs against the State, but not heavily, because when the record is silent as to the reason for the delay, we presume neither willful conduct by the State nor a valid reason for the delay. *Balderas*, 517 S.W.3d at 768 (citing *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003)); *Prihoda v. State*, 352 S.W.3d 796, 804 (Tex. App.—

San Antonio 2011, pet. ref'd) (quoting *Dragoo*, 96 S.W.3d at 314). Finally, engaging in good faith plea negotiations constitutes a valid reason for delay and cannot be weighed against the State. *Munoz v. State*, 991 S.W.2d 818, 824–25 (Tex. Crim. App. 1999) (en banc) (citing *Barker*, 407 U.S. at 531) (holding that valid reason for delay not weighed against government); *United States v. Anderson*, 902 F.2d 1105, 1110 (2d Cir. 1990) (holding no speedy trial violation where, among other things, defense agreed to delays for purposes of plea negotiations); *Millard v. Lynaugh*, 810 F.2d 1403, 1406 (5th Cir. 1986) (holding delay caused by extended plea negotiations attributable in large part to defendant); *see Balderas*, 517 S.W.3d at 769 (considering, in analyzing reasons for delay for purposes of speedy trial claim, defense counsel's repeated requests asking prosecutor to "hold off" presenting case to district attorney for death penalty decision until defense counsel could persuade defendant to allow defense to offer plea deal). In sum, "reasons that are unjustifiable count toward the length of the delay, but justifiable reasons do not." *Huff*, 467 S.W.3d at 28 (citing *Gonzales*, 435 S.W.3d 809).

Although Daniels contends the State "never articulated a clear reason for the delay," the record shows that after arguing there was no presumptively prejudicial delay, the prosecutor then stated that assuming there was a presumptive delay, "court cases have found that any kind of deliberations between the parties kind of factor in to [sic] the reasons for the delay[.]" Accordingly, we hold the State offered the existence of plea negotiations to justify the delay. Trial counsel for Daniels also mentioned the parties "were still having discussions" more than ninety days after the arrest. Thus, viewing the evidence in the light most favorable to the trial court's denial of the speedy trial claim, *see Cantu*, 253 S.W.3d at 282, and recognizing plea negotiations are a valid reason for delay, we hold this factor does not weigh against the State. *See Munoz*, 991 S.W.2d at 824–25.

### 3. *Assertion of Right to Speedy Trial*

The third *Barker* factor concerns the timing of a defendant's assertion of his speedy trial claim and it affects the other *Barker* factors." *Huff*, 457 S.W.3d at 30 (citing *Gonzales*, 435 S.W.3d at 810–11 (citing *Barker*, 407 U.S. at 531)). More specifically, the assertion of the right is closely associated with the other factors because the strength of the defendant's efforts is shaped by them. *Barker*, 407 U.S. at 531. The more serious the deprivation, the more likely a defendant will complain. *Id.* Thus, the details of a defendant's assertion of his right to a speedy trial "'is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right [to a speedy trial].'" *Gonzales*, 435 S.W.3d at 810–11 (quoting *Barker*, 407 U.S. at 531–32).

As previously noted, Daniels was arrested on August 16, 2017. He was released on August 17, 2017, but rearrested on September 30, 2017.[4] He was indicted on March 27, 2018. Daniels's appointed trial counsel filed a motion to set aside the indictment based on the alleged failure to provide Daniels with a speedy trial on April 16, 2018, a little over two weeks after Daniels was indicted. However, as noted, Daniels was arrested in August 2017 and released, then rearrested in September 2017. He was therefore incarcerated for more than six months before counsel raised the speedy trial issue.[5]

---

[4] The September 30, 2017 arrest was based on a parole violation. Daniels remained in custody from the time of the September 30, 2017 arrest through his May 18, 2018 sentencing.

[5] Daniels filed three pro se motions that could be interpreted as asserting the right to a speedy trial. The first motion, was filed on April 6, 2018; the second and third motions were filed April 17, 2018, and April 30, 2018. However, these pro se motions were filed at a time when Daniels was represented by appointed counsel. A defendant has no right to hybrid representation, and therefore, a trial court can disregard any pro se motion filed by a defendant who is represented by counsel. *Melendez v. State*, 467 S.W.3d 586, 591 (Tex. App.—San Antonio 2015, no pet.) (citing *Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007)). At the May 7, 2018 hearing on the motion to dismiss for failure to afford a speedy trial filed by Daniels's court-appointed trial counsel, the trial court heard from Daniels's attorney as well as Daniels himself. The trial court denied the motion on the record at the hearing. The clerk's record contains a single order denying the speedy trial request, which is dated May 7, 2018. Thus, it appears the only speedy trial request ruled on by the trial court is the one filed by appointed trial counsel. Because Daniels was represented by counsel when he filed his pro se motions, we cannot consider them for purposes of the *Barker* analysis. *See id.* Additionally, the pro se motions were never ruled on by the trial court. *See* TEX. R. APP. P. 33.1.

Although a defendant cannot file a speedy trial motion until formal charges are made — thus, no speedy trial motion could have been filed in this case until March 27, 2018, the United States Supreme Court and the Texas Court of Criminal Appeals have recognized the right to a speedy trial can be asserted in other ways. *See Dillingham v. United States*, 423 U.S. 64, 65 (1975); *Cantu*, 253 S.W.3d at 284. As the Supreme Court stated in *Dillingham*, and the court of criminal appeals thereafter quoted in *Cantu*, "'the invocation of the speedy trial provision … need not await indictment, information, or other formal charge.'" *Dillingham*, 423 U.S. at 65; *Cantu*, 253 S.W.3d at 284. An accused who has been arrested, but not formally charged, has two choices with regard to his right to a speedy trial: (1) wait until he is charged, file a motion requesting a speedy trial, and, if the motion is denied, then file a motion to dismiss "because he has diligently sought what he is entitled to—a speedy trial," or (2) wait until he is charged and file a motion to dismiss "if he can show that he diligently tried to move the case into court before formal charges were filed." *McGregor v. State*, 394 S.W.3d 90, 115 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (quoting *Cantu*, 253 S.W.3d at 284). Here, Daniels waited until he was charged and filed a motion to dismiss.[6] However, Daniels has not shown he tried to move the case into court before formal charges were filed. *See id.* Seeking a dismissal instead of a speedy trial weakens a speedy-trial claim because it shows the defendant's desire to have no trial as opposed to a speedy one. *Cantu*, 253 S.W.3d at 283. Thus, viewing the evidence in the light most favorable to the trial court's order of denial, we hold this factor does not weigh in Daniels's favor. *See id.*

---

[6] The motion was styled "Motion to Set Aside Indictment for Failure to Afford Constitutional Rights to Speedy Trial," and it sought dismissal of the charges. At the hearing on the motion, Daniels's counsel advised the trial court he "had filed a Motion to Dismiss this cause for failure to afford a speedy trial."

### 4. *Prejudice to Daniels*

Because "pretrial delay is often both inevitable and wholly justifiable," the fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant. *Barker*, 407 U.S. at 532. When a court analyzes the prejudice, if any, to the defendant, it must do so in light of the interests the right to a speedy trial was designed to protect: (1) freedom from oppressive pretrial incarceration; (2) minimization of the defendant's anxiety and concern accompanying a public accusation; and (3) limitation of the possibility that the accused's defense will be impaired. *Huff*, 467 S.W.3d at 30 (citing *Cantu*, 253 S.W.3d at 285). Of these interests, the third is the most important because the inability of a defendant to adequately prepare a defense affects the fairness of the entire system. *Id.*

Daniels was incarcerated on September 30, 2017, on an unrelated parole violation. He was therefore incarcerated for approximately seven and a half months prior to judgment. At the hearing on his motion to dismiss for lack of a speedy trial, the State advised the trial court Daniels was on parole at the time of the drug arrest for another offense and had "an outstanding misdemeanor family violence case" that would have resulted in his incarceration for a parole violation even in the absence of his drug arrest. Daniels disputed the State's claim, but the trial court was entitled to disregard Daniels's testimony, controverted or not. *See Cantu*, 253 S.W.3d at 282; *Huff*, 467 S.W.3d at 26. And therefore, viewing the evidence in favor of the trial court's ultimate ruling, the trial court could have determined Daniels's incarceration was not merely a result of his drug arrest, but would have occurred in its absence due to the "outstanding misdemeanor family violence case," concluding any prejudice resulting from incarceration for the drug arrest was *de minimis*. *See Cantu*, 253 S.W.3d at 282; *Huff*, 467 S.W.3d at 26.

As for anxiety, Daniels merely stated he "sat there from" September to February "not knowing what is going on," suggesting he suffered some anxiety over his incarceration. However,

evidence of generalized anxiety is insufficient proof of prejudice under *Barker*, especially if it is no greater than that normally associated with a criminal charge or investigation. *Cantu*, 253 S.W.3d at 286.

Possible impairment of the accused's defense is the most important interest to be protected by the right to a speedy trial. *See Huff*, 467 S.W.3d at 30. With regard to this interest, Daniels stated only that his "witnesses have disappeared." A claim of prejudice based on the unavailability of witnesses requires an appellant to show: (1) the witness was unavailable at the time of trial; (2) the testimony that would have been offered was relevant and material to the defense; and (3) due diligence was exercised in an attempt to locate the witnesses for trial. *Marquez v. State*, 165 S.W.3d 741, 750 (Tex. App.—San Antonio 2005, pet. ref'd) (citing *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973)); *Ervin v. State*, 125 S.W.3d 542, 548 (Tex. App.—Houston [1st Dist.] 2002, no pet.). If a witness dies or disappears during a delay, however, the defendant need only show such witness was believed to be material to the case. *Ervin*, 125 S.W.3d at 548. When deciding whether the witness is believed to be material to the case, the court can consider whether there is any evidence that the defendant attempted to obtain the witness's statement during the delay. *Id.*

In this case, Daniels failed to identify the witnesses he alleged "disappeared." He did not provide any evidence as to what testimony his witnesses would have provided nor did he present any evidence that he attempted to obtain statements from his witnesses during the delay. *See id.* We therefore hold Daniels failed to make a prima facie showing that his ability to defend himself was impaired by the loss of his alleged witnesses.

We recognize affirmative proof of prejudice is not necessary for every speedy trial claim because excessive delay presumptively prejudices a defendant in ways he may be unable to prove. *See Dragoo*, 96 S.W.3d at 315 (citing *Doggett*, 505 U.S. at 655, 658). However, the point at which

a defendant first asserts his right to a speedy trial is important as it reflects the "seriousness of the personal prejudice" he may experience. *Cantu*, 253 S.W.3d at 284 (quoting *United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976)). Thus, Daniels's "silence during the entire pre-indictment period works against him because it suggests that any hardships he suffered were either minimal or caused by other factors." *Id.* Thus, we hold Daniels suffered no prejudice, which weighs against his speedy trial claim.

### 5. *Balancing the Barker Factors*

Having addressed the *Barker* factors, we must now balance them. *See Cantu*, 253 S.W.3d at 280. Weighing in favor of finding a violation of Daniels's right to a speedy trial is the delay. However, because the delay was just above the bare minimum required even to mandate a full *Barker* analysis, this first factor weighs very slightly against the State and in favor of a violation. *See Zamorano*, 84 S.W.3d at 656 (Keller, P.J., dissenting); *see also Balderas*, 517 S.W.3d at 768. Weighing against a speedy trial violation are: (1) the reason for the delay — good faith plea negotiations, *see Munoz*, 991 S.W.2d at 824–25; (2) Daniels's failure to seek a speedy trial, requesting only a dismissal without any showing he tried to move the case into court before formal charges were filed, *see McGregor*, 394 S.W.3d at 115; and (3) Daniels's failure to demonstrate prejudice. Accordingly, we hold the weight of the four factors, when balanced together, militates against finding a speedy trial violation. *See Barker*, 407 U.S. at 534 (holding that where defendant was not seriously prejudiced by five-year delay between arrest and trial and actions demonstrated he did not want speedy trial, Sixth Amendment right to speedy trial was not violated).

### CONCLUSION

Based on our analysis of the record, application of the proper standard of review, and consideration of the applicable law, we hold the trial court did not err in denying Daniels's motion

asserting a speedy trial violation.  We therefore overrule his sole appellate complaint and affirm the trial court's judgment.

Beth Watkins, Justice

Do Not Publish